Chilton v. Butler.

---

BRUCE A. CHILTON and JAMES COLE *v.* JOHN BUTLER.

To entitle a plaintiff to commissions on a sale, it is necessary, first, that he should establish his authority to act as the agent or broker of the defendant, either by previous employment or by the acceptance of his agency and the adoption of his acts; and secondly, he must show that his agency was the procuring cause of the sale.

Where a broker, duly authorized to sell property at private sale, has commenced a negotiation with a purchaser, the owner cannot, while such negotiation is pending, take it into his own hands and complete it, either at or below the price limited, and refuse to pay commissions. But the employment of a broker does not preclude the owner from making efforts to sell; and if he effect such sale to a purchaser not procured by the broker, he will not be liable for commissions.

A broker, having been employed to sell property at public auction, is entitled to be paid for his expenses and services in bringing it into notice, although the property is afterwards disposed of at private sale.

APPEAL by the defendant from the marine court, where the plaintiffs obtained judgment. The facts are sufficiently stated in the opinion.

*H. V. Vultee,* for appellant.

*M. M. Davidson* and *I. W. R. Bromley,* for respondents.

BY THE COURT. WOODRUFF, J.—To entitle a plaintiff to recover commissions on a sale, two things are necessary:

*First.* He must establish his authority to act as the agent or broker of the defendant, either by previous employment or by the acceptance of his agency and the adoption of his acts as such.

*Second.* He must show that his agency was the procuring cause of the sale. (*Murray* v. *Currie*, 7 Car. & Payne, 584; *Wilkinson* v. *Martin*, 8 Ib. 1.)

In the present case, the plaintiffs being brokers and auctioneers, were confessedly employed by the defendant to sell the premises in question at auction. For their services and expenses in offering the lots for sale, it is not denied that they were entitled to recover.

Having failed in effecting a sale by auction, at or above the price limited, their agency would have ceased had nothing further transpired between them and the defendant.

But upon the suggestion of the plaintiffs themselves, that they knew of a person who might buy the lot, the defendant authorized them to sell it at private sale, for not less than $6,250.

This was sufficient to establish an agency, and if the plaintiffs had then followed up the negotiation with the person referred to, or had set on foot a negotiation with another, which resulted in a sale, they would have been entitled to their commissions. And after such negotiation had commenced, and while actually pending, the defendant could not take the matter into his own hands and complete it, either at the price limited or at a less price, and refuse to pay the commissions. If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to terms of sale, and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services and expenses of the broker in bringing the property into market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker any thing, the business of a broker would not be worth pursuing; gross injustice would be done; every unfair and illiberal vendor would limit his property at a price slightly

above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent.

On the other hand, the employment of a broker does not preclude the owner from making any efforts to sell, or from receiving offers and closing a sale to a purchaser not procured by the broker; and if he make such a sale, without having in any manner availed himself of the efforts of the broker, he will not be liable for commissions.

Did the plaintiffs in this case procure the purchaser?

It is to be observed, first, that the advertisement of the premises for sale at auction and the offer at public sale had given the fact some notoriety that they were for sale. For the agency of the plaintiffs in this respect they were entitled to be paid, and for this they charge $20 88, which was tendered to them.

What more have they done? They did not sell the property to the person whom they told the defendant they knew of, and in reference to which communication he authorized them to sell for $6,250. The utmost they did in the matter of a sale, was to tell Mr. Sutton, when he called, what was the price of the property. He did not buy. And it is left in doubt by the conflicting testimony of the purchaser and Sutton, whether the former either requested Sutton to call and inquire, or even knew that he had called.

The public offer at auction called the attention of the purchaser to the premises. He never saw the plaintiffs nor negotiated with them; he denies that he knew, until after he purchased, that Sutton had seen them on the subject.

The tenant showed him the premises; Mr. Sutton conversed with him on the subject. He was told by the tenant that the defendant was owner, and he thereupon opened a negotiation with him on Monday, and became the purchaser.

All the plaintiffs appear to have done after the auction, was to state the terms on which the premises could be had, to Mr. Sutton, who had been a bidder at the auction, and whether these terms were communicated to the person who afterwards purchased or not, is left in doubt by the evidence. The proofs,

instead of showing that the acts of the plaintiffs in their capacity of brokers, were the procuring cause of the sale, rather show that nothing done by them was of any efficiency therein, and are not sufficient in my opinion to sustain the judgment.

Judgment reversed.